**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Shawn Gibbs,<br><br>            Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>           Defendant. | No. CV-20-01069-PHX-DWL<br><br>**ORDER** |

At issue is the denial by the Social Security Administration ("SSA") under the Social Security Act ("the Act") of Plaintiff Shawn Gibbs's application for disability insurance benefits. Plaintiff filed a complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 16, "Pl. Br."), Defendant SSA Commissioner's Answering Brief (Doc. 18, "Def. Br."), and Plaintiff's Reply (Doc. 20, "Reply"). The Court has reviewed the briefs and Administrative Record (Doc. 13, "R.") and now affirms the Administrative Law Judge's ("ALJ") decision (R. at 15-32) as upheld by the Appeals Council (R. at 1-3).

**I.**    **BACKGROUND**

On October 1, 2015, Plaintiff filed an application for disability insurance benefits alleging disability beginning March 28, 2012. (*Id.* at 15.) Plaintiff's claim was denied initially on February 4, 2016, and on reconsideration on August 2, 2016. (*Id.*) Plaintiff appeared before the ALJ for a hearing on his claim on March 20, 2018. (*Id.*) On February

4, 2019, the ALJ denied Plaintiff's claim. (*Id.* at 32.) Finally, on April 1, 2020, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1–3.)

The Court has reviewed the medical evidence and will discuss the pertinent evidence in addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: history of cervical fusion, cervical and thoracic degenerative disc disease, obesity, thyroid disorder, carpel tunnel syndrome, history of obesity, idiopathic neuropathy, and left ankle impairment. (*Id.* at 18.)

Ultimately, the ALJ evaluated the medical evidence and testimony and concluded that Plaintiff was not disabled from March 28, 2012, through December 31, 2017, Plaintiff's date last insured. (*Id.* at 31.) The ALJ found that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 20–21.) Next, the ALJ calculated Plaintiff's residual functional capacity ("RFC"), finding Plaintiff "had the [RFC] to perform sedentary work . . . subject to the following limitations: [Plaintiff] can stand and walk a total of four hours; frequently climb ramps and stairs; never ladders, ropes, or scaffolds; frequently balance, stoop, kneel, crouch; occasionally crawl; frequently perform overhead lifting bilaterally; frequent handling and fingering; and he requires the option to use a cane for ambulation." (*Id.* at 22.) Although the ALJ found that Plaintiff was unable to perform his past relevant work, the ALJ also found that Plaintiff could perform jobs that exist in significant numbers in the national economy (specifically, document preparer, table worker/inspector, and final assembler). (*Id.* at 29-31.)

**II.    LEGAL STANDARDS**

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a

reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ typically follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the fifth and final step, where she determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If not, the claimant is disabled. *Id.*

### III.   ANALYSIS

Plaintiff raises two issues for the Court's consideration. First, Plaintiff argues the ALJ erred by rejecting the opinions of two of his treating physicians, neurologist Dr.

Maninder Kahlon and pain management specialist Dr. Otto Uhrik.[1]  (Pl. Br. at 11–18.) Second, Plaintiff argues the ALJ erred by rejecting his symptom testimony.  (*Id*. at 18–24.)

### A. The ALJ did not err when rejecting the medical opinions of Dr. Kahlon and Dr. Uhrik.

Dr. Kahlon offered three similar opinions regarding Plaintiff's functional limitations.  (R. at 786–87, 865–66, 963–64.)  In his April 2016 opinion, Dr. Kahlon opined that Plaintiff's medical conditions would limit him to sitting, standing, and walking less than two hours per workday.  (*Id*. at 786.)  He also opined that Plaintiff would likely need to miss six or more days of work per month due to his conditions.  (*Id*. at 787.)  In his August 2017 and August 2018 opinions, Dr. Kahlon opined to similar limitations.  (*Id*. at 865–66, 963–64.)

Dr. Uhrik offered one opinion regarding Plaintiff's functional limitations.  (*Id*. at 867–68.)  In that September 2017 opinion, Dr. Uhrik (like Dr. Kahlon) opined that Plaintiff could sit, stand, and walk less than two hours each per workday and would be frequently absent from work.  (*Id*.)

The ALJ assigned "minimal" weight to each of these opinions.  (*Id*. at 26–27.)  As for Dr. Kahlon's April 2016 opinion, the ALJ provided the following three reasons for discounting it: (1) Dr. Kahlon had seen Plaintiff only a few times before offering the opinion; (2) the opinion was inadequately explained; and (3) the opinion was inconsistent with Dr. Kahlon's findings from his March 2016 visit with Plaintiff.  (*Id*. at 26.)  As for Dr. Kahlon's August 2017 and August 2018 opinions, the ALJ discounted each them for the following two reasons: (1) they were "not reflective of the clinical findings and course of treatment that Dr. Kahlon implemented with this claimant"; and (2) they were inconsistent with Plaintiff's improvement with treatment.  (*Id*. at 26-27.)  The ALJ also noted that Dr. Kahlon had not seen Plaintiff near the time of the August 2018 opinion.  (*Id*. at 27.)

---

[1] Plaintiff spells the last name of this physician "Uhrik," while it is spelled "Urich" in the ALJ's opinion and in the Commissioner's brief.  Plaintiff's spelling appears to be correct (R. 869), so the Court will use it here.

As for Dr. Uhrik, the ALJ provided the following two reasons for discounting his opinion: (1) Plaintiff only had "a few visits" with Dr. Uhrik before the opinion was offered; and (2) Dr. Urick's "own clinical findings do not support the limitations alleged," because Dr. Urick "routinely documented normal findings during physical examinations, and only occasionally observed edema, limited range or motion, or positive straight leg raising results mostly from early on in his treatment relationship with" Plaintiff. (*Id*. at 27.)[2]

There is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians, those who examined but did not treat the claimant are examining physicians, and those who neither examined nor treated the claimant are nonexamining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If a treating physician's opinion is not given controlling weight, the ALJ must consider the relevant factors listed in 20 C.F.R. § 404.1527(c)(1)-(6) and determine the appropriate weight to give the opinion. *Orn*, 495 F.3d at 632. If, as here, a treating physician's opinion is contradicted by another doctor's opinion, the ALJ can only reject the treating physician's opinion by providing specific and legitimate reasons that are based on substantial evidence in the record. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

Those standards require affirmance here. Regarding Dr. Kahlon's April 2016 opinion, it was permissible for the ALJ to discount this opinion based on Dr. Kahlon's limited treatment relationship with Plaintiff at the time of the opinion. *See* 20 C.F.R § 404.1527(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion."). This rationale was also supported by substantial evidence, as Dr. Kahlon only saw Plaintiff twice before offering the April 2016 opinion. (R. at 745, 756–58.) It was also permissible for the ALJ to discount the April 2016 opinion on the ground that it was inadequately explained—under Ninth Circuit law, this is a specific and legitimate reason for discounting

---

[2]  The Commissioner concedes that the ALJ's first proffered reason for rejecting Dr. Urick's opinion is not supported by substantial evidence and thus chooses to defend only the ALJ's second proffered reason. (Def. Br. at 15 n.8.)

a treating physician's opinion. *See, e.g., Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) ("An ALJ is not required to take medical opinions at face value, but may take into account the quality of the explanation when determining how much weight to give a medical opinion. While an opinion cannot be rejected merely for being expressed as answers to a check-the-box questionnaire, the ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions.") (citations and internal quotation marks omitted). This rationale, too, was supported by substantial evidence—Dr. Kahlon's April 2016 opinion provides little explanation and there is no corresponding explanation found in the records predating the opinion. (R. at 26, 745, 756–58, 786–87.)

Nor did the ALJ commit error when discounting Dr. Kahlon's August 2017 and August 2018 opinions. Both of the ALJ's proffered reasons for discounting those opinions—inconsistency with the objective medical evidence and inconsistency with Plaintiff's improvement from treatment—qualify as specific and legitimate reasons for rejecting a treating physician's opinion. *Ford*, 950 F.3d at 1156 (an ALJ's determination that a doctor's "opinion . . . was inconsistent with objective evidence in [the claimant's] record" qualified as a "'specific and legitimate' reason for rejecting [that] opinion"); *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (ALJ provided a specific and legitimate reason for rejecting the opinion of a treating physician where the ALJ noted the claimant "had improved since her original examination"); *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) ("[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability."); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). Both proffered reasons are also supported by substantial evidence. As for inconsistency with the objective evidence, the ALJ finding that "most of the clinical findings in treatment notes are unremarkable, demonstrating normal motor strength of the upper and lower

extremities, sensory exams intact, and normal cervical and lumbar spine with full range of motion" (R. at 27) is supported by the record—for example, general examinations conducted in March 2017 (*id.* at 841-42) and August 2017 (*id.* at 859-60) were replete with "normal" findings. Although Plaintiff identifies various reasons why a different factfinder might have viewed the objective evidence as consistent with Dr. Kahlon's opined-to limitations (Pl. Br. at 14-15), the ALJ's finding of inconsistency was rational and, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas,* 278 F.3d at 954.

Similarly, as for improvement with treatment, the ALJ identified records that suggested Plaintiff experienced significant improvement with medication and it was rational for the ALJ to conclude these records were inconsistent with Dr. Kahlon's opinions. (*See, e.g.,* R. at 796 [March 11, 2016 note: "Pain medication continues to give good relief."]; 800 [April 8, 2016 note: "Pain medication regiment continues to give good relief without significant side effects"]; 809 [June 13, 2016 note: "[Although the] pain patient experiences is severe and impacts qualify of life . . . [t]he pain mediation improves quality of life bringing pain to tolerable levels . . . ."]; 812 [June 26, 2016 note: "Rest, limited activity, and medication makes the pain better while too much activity, and standing and sitting for too long makes the pain worse."]; 871 [January 3, 2018 note: "The pain is reduced with meds."]; 876 [August 29, 2016 note: "The pain is reduced by 70% with meds."]; 878 [September 29, 2016 note: "The pain is reduced by 50% with meds."]; 880 [October 25, 2016 note: "The pain is reduced by 60% with meds."]; 905 [June 1, 2017 note: "Patient tolerating medication regimen well, no side effects noted . . . ."]; 908 [July 10, 2017 note: "Pain meds enable patient to live with less pain"]; 911 [August 1, 2017 note: "Pain meds enable patient to live with less pain and to help with normal ADLs [activities of daily living]"]; 917 [October 9, 2017 note: "Patient tolerating medication regimen well, no side effects noted."]; 920 [November 7, 2017 note: "Pain meds 'enable me to do my daily adl's'"].)

Finally, the ALJ did not err when rejecting Dr. Uhrik's opinion. As noted, the sole rationale for rejecting Dr. Uhrik's opinion that the Commissioner has chosen to defend on appeal is the ALJ's finding that Dr. Uhrik's opinion was inconsistent with his treatment records. This is a specific and legitimate reason for an ALJ to discount a treating physician's opinion. *See, e.g., Rollins,* 261 F.3d at 856 (upholding the ALJ's rejection of a treating doctor's opinion because it was internally inconsistent); *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (holding, where "[t]he ALJ's specific reason for rejecting Dr. Oh's opinion was that it conflicted with Dr. Oh's treatment notes," that "such a conflict could justify a decision not to give the treating physician's opinion controlling weight"). This reason is also supported by substantial evidence, as Dr. Uhrik's records regularly documented normal physical findings. (*See, e.g.,* R. at 875-76 [June 28, 2016 note: "Musculoskeletal: Gait and station is steady, heel and toe walk are normal, ambulates freely, the posture is erect and the movements are fluid. The muscle bulk is normal, the muscle tone is normal. The alignment of the spine is normal, palpation of the musculature shows no tenderness in neck and LS, ROM IS age appropriate. Cs decreased to side turn."]; 888 [January 3, 2017 note: "STANCE: erect. . . . EDEMA: absent . . . MUSCULOSKELETAL: symmetrical muscle bulk, SPINE: normal alignment"]; 891 [February 2, 2017 note: same]; 895 [March 7, 2017 note: same]; 898 [March 3, 2017 note: same].) And although Plaintiff again identifies various reasons why a different factfinder might have potentially concluded that Dr. Uhrik's treatment records could be reconciled with his opined-to limitations (Pl. Br. at 17-18), the ALJ's finding of inconsistency was rational and thus must be affirmed. *Thomas,* 278 F.3d at 954.

**B.     The ALJ did not err when discounting Plaintiff's symptom testimony.**

Plaintiff testified that pain in his neck, hands, and legs contributes to problems with numbness, balance, and limits his ability to sit, stand, and walk. (R. at 69, 77–78.) Plaintiff used a wheelchair at the hearing. (*Id.* at 75.) He also testified that he has significant issues with his hands and has experienced a significant loss of grip strength. (*Id.* at 83.) He claimed that a two liter of soda is "about as much as [he] can carry" with two hands. (*Id.*

at 77.) He also testified that his hands lock up and spasm and that he has trouble with even "minimally dexterous things," like typing and writing. (*Id*. at 83–84.) He added that if he carries a TV remote control and uses it in certain ways, his hand will spasm and he will have to let it go. (*Id*. at 84.)

The ALJ discounted Plaintiff's symptom testimony for three reasons. First, the ALJ found that Plaintiff's allegations were inconsistent with his improvement with treatment. (*Id*. at 23–24.) Second, the ALJ found that Plaintiff's testimony was inconsistent with the objective medical evidence. (*Id*. at 23–25.) Third, the ALJ found that there were inconsistencies between Plaintiff's activities and his claimed limitations. (*Id*. at 25.)

An ALJ performs a two-step analysis when evaluating a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal quotation marks omitted)). Second, if so, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014–15 (citing *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most demanding standard in Social Security cases. *Id*. at 1015. "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

The Court concludes that the ALJ provided specific, clear and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony. First, it was permissible for the ALJ to rely on inconsistency with the objective medical evidence as one basis (albeit not the only basis) for discounting Plaintiff's symptom testimony. *Rollins,* 261 F.3d at 856 ("While subjective pain testimony cannot be rejected on the sole ground

that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") Here, the ALJ identified many objective findings in the record (some of which are quoted in Part III.A above) that can be rationally interpreted as undermining Plaintiff's allegations. For example, the ALJ identified largely normal physical examination results from Plaintiff's appointments, including his pain management appointments. (*Id.* at 442, 444, 471, 477, 482, 488, 757–58, 796, 798, 800–02, 875–76, 878, 880, 884, 888, 891.) The ALJ also correctly noted that Dr. Kahlon's records (*see, e.g., id.* at 841-42, 859-60) disclosed "largely normal results, including normal motor strength in the upper and lower extremities, intact sensory results, and no atrophy." (*Id.* at 24.) Substantial evidence thus supports the ALJ's conclusion that Plaintiff's allegations of disabling symptoms were inconsistent with the objective medical evidence.

It was also permissible for the ALJ to discount Plaintiff's allegations because they were inconsistent with Plaintiff's improvement from treatment. *Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling."). The ALJ identified many records that indicate Plaintiff responded well to treatment (relevant excerpts of which are quoted in Part III.A above). As noted, Plaintiff regularly reported a reduction of 50% (or more) in pain from medication and stated on several occasions that his pain medication enabled him to perform his activities of daily living. Accordingly, the ALJ's conclusion that Plaintiff's symptom testimony was inconsistent with his improvement with treatment is supported by substantial evidence. Although Plaintiff identifies reasons why his record of improvement could be construed as consistent with his symptom testimony, it was not irrational for the ALJ to reach a contrary conclusion.

Finally, it was also permissible for the ALJ to discount Plaintiff's allegations due to inconsistency with his activities. *Rollins*, 261 F.3d at 857 (affirming ALJ's rejection of claimant's symptom testimony in part because "[t]he ALJ . . . pointed out ways in which Rollins' claim to have totally disabling pain was undermined by her own testimony about

her daily activities"); *Molina v. Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) ("In evaluating the claimant's [symptom] testimony, . . . the ALJ may consider inconsistencies . . . between the testimony and the claimant's conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged symptoms. . . . Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.") (citations and internal quotation marks omitted). Although some of the ALJ's findings in this respect may have been erroneous, substantial evidence supports the ALJs finding that Plaintiff's allegations regarding his hand limitations were inconsistent with the evidence of his video-game playing. The evidence that Plaintiff plays video games as a hobby, even if he doesn't play particularly well (*see, e.g.,* R. at 291, 718), can be rationally interpreted as undermining Plaintiff's allegation (R. at 83-84) that his hand function is extremely limited. Although Plaintiff attempts to undermine the ALJ's finding of inconsistency on this point by noting that a video game controller is not as *heavy* as the heaviest object Plaintiff claimed to be able to carry (Pl. Br. at 21-22 & n.11), it was rational for the ALJ to interpret the evidence of video-game playing not as evidence of lifting ability but as evidence of hand dexterity and function. At any rate, substantial evidence is a relatively low evidentiary threshold and the ALJ's findings rise to that threshold. *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009).

**IT IS THEREFORE ORDERED** affirming the decision of the Administrative Law Judge (R. at 15–32).

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 10th day of August, 2021.

Dominic W. Lanza
United States District Judge